**In the Matter of Judy Emely EDWARDS, also known as Judy Emely Glass, Debtor–Appellant.**

No. 89–1111.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1990.

Decided April 27, 1990.

ted this evidence and did not abuse his discretion.

**1384**

Keith A. Peterson, Indianapolis, Ind., for defendant-appellee.

George E. Palmer, UAW Legal Services Plan, Indianapolis, Ind. and Annette Rush, UAW Legal Services Plan, Kokomo, Ind., for debtor-appellant.

Before CUDAHY and COFFEY, Circuit Judges, and SHARP, District Judge.*

CUDAHY, Circuit Judge.

The debtor, Judy Emely Edwards, filed for bankruptcy under Chapter 7, but wanted to continue paying off the installment loans secured by two cars without reaffirming the debts and thus without continuing to be personally liable on the loans. The question presented by this case is, therefore, whether the options of surrender, redemption or reaffirmation provided in 11 U.S.C. § 521 are exclusive or whether a debtor may retain secured property without doing more, so long as she is not in default on the underlying loans. Both the bankruptcy court and the district court held the § 521 options to be exclusive because both the language of the Bankruptcy Code and the intent of its drafters contradict the view that a debtor may retain possession of collateral while continuing to make regularly scheduled installment payments, absent the creditor's consent. Edwards appeals. We affirm.

## I. Facts

Merchants National Bank holds two promissory notes executed by the debtor, Judy Emely Edwards.[1] These two notes are secured by a 1981 Plymouth Reliant and a 1981 GMC truck. Although Edwards has had trouble making timely payments on these loans in the past, she is presently current on all of her loan obligations to Merchants.[2]

On January 22, 1988, Edwards filed for relief under Chapter 7 of the United States Bankruptcy Code. Pursuant to 11 U.S.C. § 521, she filed a statement of intention setting forth a plan to reaffirm the debts owing to Merchants.[3] Edwards failed, however, to execute the corresponding reaffirmation agreements within the time period set out in 11 U.S.C. § 521(2)(B).

Thereafter, a meeting of Edwards creditors was held as required by 11 U.S.C. § 341. Following this meeting, the interim trustee entered his Report of No Assets/No Distribution, and abandoned the secured collateral from the bankruptcy estate. Subsequently, Edwards filed an amended statement of intention which evidenced an intent to retain possession of Merchants' collateral without reaffirming the debts for the car or the truck, but while continuing to make regularly scheduled payments.

Merchants, however, wanted Edwards' personal liability to continue and sought to compel her to perform according to her original statement of intention. A hearing was held before a bankruptcy judge and evidence was introduced. The bankruptcy court refused to compel Edwards to reaffirm the debts because it found that the Bankruptcy Code's policy of protecting

---

* The Honorable Allen Sharp, Chief Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

1. The debtor, Judy Emely Edwards, is also known as Judy Emely Glass. We will, however, refer to her as "Edwards" throughout this opinion.

2. Merchants has conceded that Edwards has not defaulted on the two loans in question, and our analysis presumes this to be the case.

3. Edwards would remain personally liable on the loans after reaffirmation. Reaffirmation would also cure all past defaults. Absent reaffirmation and after discharge in bankruptcy, on the other hand, Edwards would no longer be personally liable in case of default. The creditor's only recourse in such a case would be to seek repossession of the collateral.

debtors from the burdens of improvident reaffirmation agreements argued against compelling her to reaffirm. The bankruptcy court did, however, order Edwards to make a choice between reaffirming the debt, redeeming the collateral or surrendering the automobile and truck to Merchants, as set forth in § 521. Edwards appealed to the district court, which affirmed the decision of the bankruptcy court. 95 B.R. 97. Edwards now appeals to this court.

## II. Analysis

11 U.S.C. § 521(2)[4] directs a debtor to file a statement of intention of his or her plans either for keeping or for relinquishing property abandoned by the estate or exempted from discharge. The Bankruptcy Code provides a debtor with three clear options in this regard. First, a debtor may choose to surrender the collateral to the creditor. If a debtor goes this route, the amount by which the debtor's obligations exceed the value of the collateral, if any, will be discharged. If, on the other hand, a debtor chooses to retain possession of secured collateral, he or she may choose to reaffirm the debt and enter into a new agreement with the creditor for repayment, 11 U.S.C. § 524(c), or the debtor may redeem the collateral by paying the creditor the amount of the secured claim or the fair market value of the collateral, whichever is less, 11 U.S.C. § 722.[5]

The question presented by this case is whether a debtor who files for relief under Chapter 7 of the Bankruptcy Code must make the choice provided in § 521. Must the debtor, as a condition of retaining the property which secures an installment loan, either redeem it by paying for it lump-sum or expressly reaffirm the debt underlying the collateral—even though the debtor has performed, and continues to perform, all of the obligations of the installment loan agreement?[6] At first glance, there appears to be a pronounced split of authority on this question. But a closer look at the decisions reveals that any existing split is narrow and inconclusive. Many of the cases cited on the point are largely inapposite.

For the proposition that the debtor may keep the collateral without reaffirming the agreement, for example, the appellant has cited *Riggs Nat. Bank of Washington, D.C. v. Perry*, 729 F.2d 982 (4th Cir.1984). *Riggs* is not, however, in point. The *Riggs* case addresses the question whether an *ipso facto*, or "default-upon-filing," clause in a loan agreement provides sufficient "cause" to allow an over-secured creditor to have an automatic stay modified or lifted. *Riggs* holds that a "default-upon-filing" clause alone does not justify the modification of a stay. Consequently, a debtor may retain oversecured property—without choosing between reaffirmation, redemption and the like—until the expiration of the automatic stay.

---

**4.** 11 U.S.C. § 521(2), as added by the 1984 amendments to the Bankruptcy Code, provides that:

> if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—
> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
> (B) within forty-five days after the filing of a notice of intent under this section, or within

such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
> (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title; ...

**5.** *See In re Bell*, 700 F.2d 1053, 1055 (6th Cir. 1983), citing *In re Zimmerman*, 4 B.R. 739 (Bankr.S.D.Cal.1980); *In re Hart*, 8 B.R. 1020 (D.C.N.Y.1981).

**6.** Evidently, the agreements between Merchants and Edwards consist of both a contract and a promissory note. For simplicity, we will refer to these documents together as the "installment loan agreement" or, more simply, as the "loan" or the "agreement."

*Riggs* does not address the circumstances under which a debtor may retain property after the stay has been lifted and after discharge. In fact, the *Riggs* court refused to reach the question whether the options set forth in § 521 were mandatory or discretionary. 729 F.2d at 986. Thus, *Riggs* does not deal with the issue presented by the case before us.[7] Here, Merchants is not attempting to have the automatic stay lifted. Rather, it is asking that Edwards be required to select, and to perform, one of the options provided in the Bankruptcy Code. This is quite a different issue. The question before us is whether the scheme provided in § 521 was intended to be exclusive and mandatory.

In answer to this question, the Sixth Circuit has held that a debtor who wishes to retain secured property must redeem or reaffirm, and that redemption cannot be accomplished through installment payments. *In re Bell,* 700 F.2d 1053, 1056–1057, 1058 (6th Cir.1983).[8] We think this conclusion is correct. The language of § 521 is mandatory ("The debtor *shall* ...") (emphasis added). Moreover, the statute clearly contemplates performance—within a specified period of time—of the alternatives outlined by it. ("The debtor *shall ... perform* his intention ...."). *Id.* (emphasis added).

In addition, as the *Bell* court states, reaffirmation is supposed to involve a fully voluntary negotiation on both sides. Permitting a debtor to retain property while keeping up installment payments without a reaffirmation of personal liability allows a debtor to force a new arrangement on a creditor. This negates the voluntarism contemplated by the statute. *In re Bell,*

700 F.2d at 1056. No debtor would reaffirm personal liability unless required to do so.

The 1984 Consumer Finance Amendments to the Bankruptcy Code were intended, *inter alia,* to protect creditors from the risks of quickly depreciating assets and to keep credit costs from escalating because of the too-ready availability of discharge. *See In re White,* 49 B.R. 869, 872 (Bankr. W.D.N.C.1985). This legislative purpose speaks strongly against permitting debtors to improve their position dramatically against secured creditors by relieving them of personal liability. When a debtor is relieved of personal liability on loans secured by collateral, the debtor has little or no incentive to insure or maintain the property in which a creditor retains a security interest. The value of the collateral may fall below the level of the loan, leaving the creditor undersecured and driving up future costs of credit.[9]

The Tenth Circuit has, however, recently decided that a bankruptcy court has discretion, as the facts warrant, to permit a debtor to retain collateral without either reaffirming or redeeming. *Lowry Federal Credit Union v. West,* 882 F.2d 1543, 1544, 1546 (10th Cir.1989). *Lowry* is, of course, distinguishable because here the bankruptcy court did not exercise its discretion to permit retention of collateral without reaffirmation or redemption. The *Lowry* court seemed to think that § 521 was mandatory but that the trustee of the estate lacked any power to compel the debtor to act. 882 F.2d at 1546. This aspect of *Lowry* is not consonant with the plain language of the Bankruptcy Code. *Lowry* also renders the

---

**7.** Consequently, the cases which rely on *Riggs* as precedent are largely inapposite as well. *See, e.g., In re Berenguer,* 77 B.R. 959, 960 (Bankr.S. D.Fla.1987); *In re Cassell,* 41 B.R. 737, 740 (Bankr.E.D.Va.1984); *In re Ballance,* 33 B.R. 89, 90 (Bankr.E.D.Va.1983). It is important to note, too, that many of these cases were decided before the 1984 Consumer Finance Amendments to the Bankruptcy Code were adopted.

**8.** *Bell* also holds "default-upon-filing" clauses to be enforceable against property that has been abandoned from a debtor's estate. This additional holding has no bearing on our analysis as we are in no way predicating our conclusions

on the enforceability of "default-upon-filing" clauses.

**9.** We note that the alternative of reaffirmation is not necessarily onerous. The retention of personal liability and the prospect of perpetuating at least some of the benefits of the original bargain provide significant incentives to the creditor to renegotiate. If a creditor should refuse to renegotiate and the debtor has insufficient funds to redeem the property, there is always the possibility of refinancing with a different lender.

statutory scheme set up by § 521 and § 524 (the specific reaffirmation provision) nugatory. And *Lowry* does not comport with the spirit of the 1984 Amendments to the Bankruptcy Code. Hence, we decline to follow it.

### III. Conclusion

For these reasons, we hold that 11 U.S.C. § 521 requires a debtor to choose between the reaffirmation, redemption or surrender of property abandoned from the estate or exempted from discharge. The judgment of the district court is, therefore, AFFIRMED.