**In re Wanda COVEL, Debtor.**

No. 2:12–bk–70878.

United States Bankruptcy Court,
W.D. Arkansas,
Fort Smith Division.

July 3, 2012.

Kathryn A. Stocks, Fort Smith, AR, for Benefit Bank.

Wayne Young/Joseph W. Cornell, for Debtor.

R. Ray Fulmer II, Fort Smith, AR, chapter 7 trustee.

### ORDER

BEN BARRY, Bankruptcy Judge.

Before the Court is the *Motion For Order Requiring Debtor to Complete Reaffirmation, Redemption or Surrender* filed by creditor Benefit Bank on May 10, 2012. The motion relates specifically to the debtor's Chapter 7 Individual Debtor's Statement of Intention in which the debtor stated her intention to reaffirm a debt with Benefit Bank related to real property—her home. According to its motion, Benefit Bank alleges that after stating her intention to reaffirm the debt, the debtor has now decided she does not want to reaffirm, redeem, or surrender the subject property. Benefit Bank believes that the bankruptcy code—specifically, 11 U.S.C. § 521(a)(2)—requires the debtor to either redeem or reaffirm the debt secured by the real property and moves this Court to order the debtor to comply with § 521(a)(2).

The Court heard Benefit Bank's motion on June 13, 2012, and at the conclusion of the hearing took the motion under advisement. A representative from Benefit Bank (the only witness called by either party) testified that Benefit Bank wants the debtor to reaffirm her debt so that Benefit Bank will retain the debtor's personal liability in the event of a default on its loan. The representative testified that the bank believes generally that if a debtor does not reaffirm her debt, she has less incentive to maintain the property. However, the representative also testified that this debtor, Ms. Covel, has taken excellent care of her property and has had an excellent relationship with the bank. He also testified that she has never been late with any of her payments to the bank. According to the bank, the debtor has equity in the property, but it may be insufficient to cover the expense of foreclosure and the cost of a sale, should the debtor default on her obligation.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(O). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014. For the reasons stated below, the Court denies Benefit Bank's motion.

The relevant section of the bankruptcy code is § 521(a)(2), which states:

(a) The debtor shall—

. . .

(2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and

(B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such proper-

ty, as specified by subparagraph (A) of this paragraph;

except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h);

11 U.S.C. § 521(a)(2).

Prior to BAPCPA, courts were divided about whether the debtor had any other option other than the three options set forth in what is now § 521(a)(2): surrender the subject property or retain the subject property by either reaffirming the debt secured by property of the estate or redeeming the property under § 722.[1] The courts of appeal in the second, third, fourth, ninth, and tenth circuits held that these three options were not the only options available to a debtor and recognized the debtor's right to retain property that is collateral for a consumer debt and continue to make payments without reaffirming the debt if the debtor is current on her loan obligation—what is commonly referred to as the "ride through" option. *See, e.g., Price v. Delaware State Police Fed. Credit Union (In re Price)*, 370 F.3d 362, 364 (3d Cir.2004) (concluding that nondefaulting debtor may retain secured property by keeping current on their

loans); *Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 53 (2d Cir.1997) (holding that the court is not prevented from allowing debtor who is current on loan obligations to retain collateral and keep making payments). On the other hand, the courts of appeal in the first, fifth, seventh, and eleventh circuits (and much earlier, the sixth circuit) concluded that the list of options set forth in § 521(a)(2) were the only means for a debtor to retain property that is collateral for a consumer debt, in essence concluding that ride through was not an option. *See In re Chubb*, 351 B.R. 478, 482 (Bankr. E.D.Tenn.2004) (listing a specific case for each circuit and citing *In re Bell*, which was decided prior to the enactment of § 521(a)(2), for its recognition that in the Sixth Circuit "redemption and reaffirmation constituted the exclusive methods pursuant to which the [chapter 7 debtors] could retain possession of the secured collateral." *General Motors Accept. Corp. v. Bell (In re Bell)*, 700 F.2d 1053, 1058 (6th Cir.1983)).[2] The Eighth Circuit has not issued an opinion concerning the ride thorough option.

Each of these pre-BAPCPA circuit court of appeal cases referred to personal property, not real property, and most of the

---

1. BAPCPA is the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The act was signed by the president on April 20, 2005. Most of the amendments, including all of the amendments relative to this opinion, became effective on October 17, 2005.

There were two amendments under BAPCPA relating to § 521(a)(2). First, under § 521(a)(2)(B), a debtor used to have 45 days after filing her notice of intent to perform her intentions; after BAPCPA, she now has 30 days after the first date set for her meeting of creditors to perform her intentions. Second, BAPCPA added an exception to the prohibition against alteration of the debtor's rights with regard to the subject property (the hanging paragraph after subsection (a)(2)(B)) by

referencing § 362(h), a new provision relating to personal property and termination of the automatic stay.

BAPCPA also renumbered § 521 to include subsection references (a) through (j). All references in this opinion to § 521 include the amended subsection letters.

2. Bankruptcy courts within the circuits were also divided on this issue. *Compare In re Parker*, 142 B.R. 327 (Bankr.E.D.Ark.1992) and *In re Manring*, 129 B.R. 198 (Bankr. W.D.Mo.1991) (permitting ride through option) *with In re Gerling*, 175 B.R. 295 (Bankr. W.D.Mo.1994), *In re Kennedy*, 137 B.R. 302 (Bankr.E.D.Ark.1992), and *In re Griffin*, 143 B.R. 535 (Bankr.E.D.Ark.1991) (not permitting ride through option).

courts resolved the question of a ride through option by interpreting the phrase "if applicable" that appears in subsection (a)(2)(A). According to the statute, a debtor must file her statement of intention "with respect to the retention or surrender of such property and, *if applicable,* specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property." 11 U.S.C. § 521(a)(2)(A) (emphasis added; BAPCPA did not amend this subsection). The Third Circuit Court of Appeals, in its opinion that allowed the ride through option, explained the disagreement concerning the proper interpretation of the phrase "if applicable":

> The trouble lies with the phrase "if applicable." Do those words merely indicate that the three options—exemption, redemption, and reaffirmation—are relevant when a debtor intends to retain and not applicable when a debtor chooses to surrender the collateral? If so, section 521(2)(A) [now 521(a)(2)(A) ] sets out an exhaustive set of retention options. Or does "if applicable" mean "if" the debtor wishes to choose any of the three options that follow on its heels, i.e., when redemption, reaffirmation, and exemption "apply," that intention must be specifically stated? If the latter construction is correct, then section 521(2)(A) leaves available other methods of retention, such as by keeping the loan current.

*Price,* 370 F.3d at 370.

The *Price* court went on to recognize the split among the circuit courts and how, although "diametrically opposed," each divided group based its interpretation on the plain language of the statute. *Id.* at 371. In this light, the court continued its analysis of the statute related to other code provisions and, finally, the legislative history of § 521(a)(2)(A), to which it stated that "[t]here is not a hint in the legislative history that Congress intended to prevent [the debtors] from retaining collateral as [the debtors] have done." *Id.* at 375–76. *See also Dumont v. Ford Motor Credit Co. (In re Dumont),* 581 F.3d 1104, 1111 (9th Cir.2009) (noting that, in general, legislative history with regard to a ride through option is "not an able guide here."); *cf. McClellan Fed. Credit Union v. Parker (In re Parker),* 139 F.3d 668, 673 (9th Cir.1998) ("The legislative history is of little assistance in interpreting the congressional intent behind § 521.").

The *Price* court also recognized that § 521(a)(2) may have been enacted to serve a procedural function for "notice" in bankruptcy, rather than a substantive function. *Price,* 370 F.3d at 374. Notifying a creditor what the debtor intends to do with the creditor's collateral does not require any further action by the creditor. Both the debtor and the creditor operate under the protection required by the code, regardless of whether the debtor intends to surrender the collateral or keep it by remaining current on her obligation. *Id.* However, "a debtor's intention to redeem, reaffirm, or claim an exemption is valuable information for a secured creditor to learn at the beginning of a chapter 7 proceeding." *Id.* According to Collier on Bankruptcy, the paragraph at the end of § 521(a)(2)(B) operated as a savings clause, the purpose of which was "to make clear that the primary purpose of section 521(a)(2) is one of notice, to remedy creditors' complaints to Congress that they could not reach debtors' attorneys and were not permitted to contact *pro se* debtors at all. Section 521(a)(2) was not intended to in any way limit the options available to debtors in dealing with secured debts." 4 Collier on Bankruptcy

¶ 521.14[5], at 521–51 (16th ed.) (2011) (footnote omitted).[3]

■ Congress did not operate in a vacuum when it enacted BAPCPA. Presumably, Congress is aware of the existing legal landscape when it passes legislation. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) ("We assume that Congress is aware of existing law when it passes legislation."); *In re Caraballo*, 386 B.R. 398, 402 (Bankr.D.Conn.2008) ("The court 'assume[s] that Congress passed each subsequent law with full knowledge of the existing legal landscape....'" quoting *Northwest Airlines Corp. v. Assoc. of Flight Attendants–CWA (In re Northwest Airlines Corp.)*, 483 F.3d 160, 169 (2d Cir. 2007)). As previously stated, a review of the nine circuits that specifically addressed the ride through option under § 521(a)(2) indicates unequivocally that the legal landscape prior to the enactment of BAPCPA was cloudy, at best.[4] Although many of the pre-BAPCPA courts' interpretations of § 521(a)(2) were based on the phrase "if applicable," Congress did not amend that particular subsection when it enacted BAPCPA. That does not mean Congress was not cognizant of the opinions and discussion surrounding § 521(a)(2)(A).

Congress addressed the confusion by amending or adding related sections of the code to create a different landscape with regard to the treatment of personal property under § 521. Specifically, with the enactment of BAPCPA, Congress amended §§ 521(a)(2) and 362(h) and added subsections 521(a)(6) and 521(d).[5] First, at

---

3. Prior to the enactment of BAPCPA, the exception referencing § 362(h) did not appear in the paragraph.

4. *See, e.g., Price v. Del. State Police Fed. Credit Union (In re Price)*, 370 F.3d 362, 367 (3rd Cir.2004) ("opinions of the courts of appeals abound on this question, with the courts being evenly divided."); *Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843, 844 (1st Cir.1998) ("presents a question of statutory interpretation that has divided the circuits."); *McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668, 672 (9th Cir.1998) ("The circuits are evenly split...."); *Johnson v. Sun Finance Co. (In re Johnson)*, 89 F.3d 249, 251 (5th Cir.1996) ("the meaning of Section 521(2) has been hotly contested in recent jurisprudence."); *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512, 1514 (11th Cir.1993) ("Other circuits have reached different conclusions regarding the debtor's duties under section 521."); *Home Owners Funding Corp. of Am. v. Belanger (In re Belanger)*, 962 F.2d 345, 347 (4th Cir.1992) ("Courts do not agree about the meaning of § 521(2)."); *In re Edwards*, 901 F.2d 1383, 1385 (7th Cir.1990) ("At first glance, there appears to be a pronounced split of authority on this question.").

5. The Court also recognizes that Congress added subsection 524(j) when BAPCPA was enacted. This subsection exempts secured creditors that retain an interest in the debtor's real property that is the debtor's principal residence from being in violation of the § 524(a)(2) discharge injunction if they seek or obtain "periodic payments associated with a valid security interest in lieu of pursuit of *in rem* relief to enforce the lien." 11 U.S.C. § 524(j). According to Collier on Bankruptcy, this section would not make sense if a debtor was required to only surrender, redeem, or reaffirm real property. 4 Collier on Bankruptcy ¶ 521.14[5], at 521–53 (16th ed.) (2011). If the property was either surrendered or redeemed, the creditor would not have a claim after the debtor's discharge, and if the property was reaffirmed, the discharge injunction would not be applicable. *Id.* However, as Judge Kimball points out in *In re Steinberg*, the analysis in Collier on Bankruptcy "ignores the practical impact of sections 521 and 524 in many cases that come before this Court." *In re Steinberg*, 447 B.R. 355, 358 (Bankr.S.D.Fla.2011). According to Judge Kimball, requiring the debtor to surrender the property does not necessarily mean the debtor needs to vacate the property:

[N]othing in the Bankruptcy Code requires a mortgagee to accept property surrendered by a chapter 7 debtor. Nothing prevents the mortgagee from allowing the debtor to

the end of the paragraph that appears after subsection 521(a)(2)(B), Congress added an exception to the prohibition against alteration of the debtor's rights with regard to the subject property—the savings clause-by referencing a new code provision relating to personal property and termination of the automatic stay— § 362(h).[6] Section 362(h) provides for the termination of the automatic stay *with respect to personal property* if the debtor fails to either file a statement of intentions or timely take the action specified in the statement.[7] Similarly, new subsection 521(a)(6) states that a debtor shall not retain possession of *personal property* unless she either enters into a reaffirmation agreement with the creditor or redeems the property from the security interest.[8] Finally, new subsection 521(d) reinstates any provision in an agreement between the debtor and the creditor that has the effect of placing the debtor in default because the debtor filed a bankruptcy case if the debtor fails to take the action required under § 521(a)(6)—either enter into a reaffirmation agreement or redeem the *personal property* from the security inter-

---

remain in the home. And nothing prevents the debtor from continuing to make periodic payments on a mortgage after entry of discharge.

. . . .

While the debtor cannot force the creditor to accept a non-recourse obligation, the creditor may determine that it prefers to accept a non-recourse obligation so long as the debtor continues to make periodic payments on the debt. Section 524(j) provides the creditor with that option.

*Id.* at 358–59.

Neither view is in contravention of this Court's reading of § 521(a)(2).

**6.** The full text of § 521(a)(2) appears earlier in this opinion. The relevant provision in that subsection states as follows:

except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, *except as provided in section 362(h).*

11 U.S.C. § 521(a)(2) (emphasis added).

**7.** Section 362(h) states in relevant part:

In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated *with respect to personal property* of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)—

(A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or

to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and

(B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

11 U.S.C. § 362(h) (emphasis added).

**8.** Section 521(a)(6) states:

The debtor shall—

(6) in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of *personal property* as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such *personal property* unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either—

(A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or

(B) redeems such property from the security interest pursuant to section 722.

est.[9]

[2] By not making corresponding changes concerning real property, Congress appears to tacitly recognize a ride through option for real property. As stated by Judge Weil in *In re Caraballo*, "this court must conclude that when Congress eliminated the ride through option for personal property in BAPCPA, Congress was aware that there was a ride through option for real property and intended to leave it intact post-BAPCPA." *In re Caraballo*, 386 B.R. 398, 402 (Bankr.D.Conn.2008).[10] This Court agrees. The relevant language under § 521(a)(2)(A) remains the same: within 30 days of filing her petition, a debtor must file her statement of intention for any debts that are secured by property of the estate *"with respect to the retention or surrender of such property."* In other words, regardless of whether the subject property is real property or personal property, a debtor must state her intention to either surrender the property or retain the property.

■ Next, taking into consideration the BAPCPA amendments to the related sections noted above, to the extent the prop-

erty is personal property that the debtor intends to retain, the remaining requirements relating to the debtor's intentions become *applicable*—she must specify that the property is claimed as exempt, that she intends to redeem the property, or that she intends to reaffirm the debt associated with the property. If the debtor does not state her intentions with regard to the personal property and then timely perform her intentions under § 521(a)(2)(B), the added and amended provisions of the code offer relief for the creditor. *In re Linderman*, 435 B.R. 715, 718 (Bankr.M.D.Fla.2009) ("debtors no longer can keep personal property without reaffirming the debt or redeeming the property."); *see also In re Schmidt*, 397 B.R. 481, 486 (Bankr.W.D.Mo.2008) (stating in dicta that "as part of BAPCPA, Congress added § 362(h) and § 521(a)(6) to the Code, which effectively eliminated the fourth option, but only as to personal property.").

■ However, to the extent the subject property is real property and the debtor is current on her obligation to the creditor, retention of the property does not require

11 U.S.C. § 521(a)(6) (emphasis added).

**9.** Section 521(d) states:

If the debtor fails timely to take the action specified in subsection (a)(6) of this section, or in paragraphs (1) and (2) of section 362(h), with respect to property which a lessor or bailor owns and has leased, rented, or bailed to the debtor or as to which a creditor holds a security interest not otherwise voidable under section 522(f), 544, 545, 547, 548, or 549, nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor. Nothing in this subsection shall be deemed to justify

limiting such a provision in any other circumstance.

11 U.S.C. § 521(d).

**10.** Each of the bankruptcy courts that have addressed the propriety of allowing a ride through with regard to real property after the enactment of BAPCPA has relied on the earlier precedent of its respective circuit court for the authority to either allow or not allow real property to ride through. *See, e.g., In re Linderman*, 435 B.R. 715 (Bankr.M.D.Fla.2009); *In re Hart*, 402 B.R. 78 (D.Del.2009); *In re Caraballo*, 386 B.R. 398 (Bankr.D.Conn. 2008); *In re Wilson*, 372 B.R. 816 (Bankr. D.S.C.2007). As stated, the Eighth Circuit has not ruled previously on whether a debtor is required to surrender or redeem the property or reaffirm the underlying debt under § 521.

the debtor to specify redemption or reaffirmation on her statement of intentions. Of course, the debtor is not prohibited from redeeming her real property or reaffirming her obligation on the property. Nor is the creditor precluded from requesting and obtaining relief from the automatic stay if the creditor has an interest in real property and believes the provisions of § 362(d) providing relief from the automatic stay have been met. The amendments to the code under BAPCPA simply eliminated the requirement to move for relief from the automatic stay with regard to personal property. In this instance, Benefit Bank did not request relief from the automatic stay.

■ The Court appreciates that Benefit Bank does not want its current recourse obligation to become a nonrecourse obligation, but in most instances, a debtor's personal liability is discharged from all debts that arose before she filed her bankruptcy petition. 11 U.S.C. § 727(b). Benefit Bank is still entitled to the value of its collateral; if the debtor fails to fulfill the terms of her agreement with the bank after she receives her discharge and her case is closed, the bank can proceed with whatever remedies it has in state court against the property.

For the reasons stated above, the Court holds that with regard to real property that is collateral for a consumer debt, in addition to the three options set forth in § 521(a)(2)—surrendering the property or retaining the property by either reaffirming the debt secured by the property or redeeming the property under § 722–if the debtor is current on her obligation to the creditor, she also has the right to retain the property and continue to make payments to the secured creditor. Accordingly, the Court denies Benefit Bank's *Motion*

*For Order Requiring Debtor to Complete Reaffirmation, Redemption or Surrender.*

IT IS SO ORDERED.