**In re Paul Douglas ROWE, Debtor.**

No. 05–27589.

United States Bankruptcy Court, D. Kansas.

May 10, 2006.

Drew Frackowiak, Overland Park, KS, for Debtor.

## MEMORANDUM AND ORDER DENYING MOTION OF FIRST NATIONAL BANK OF KANSAS TO COMPEL TURNOVER OF VEHICLE

DALE L. SOMERS, Bankruptcy Judge.

The issue before the Court is whether the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereafter "BAPCPA") eliminated the "fourth option," an alternative to reaffirmation or redemption available before BAPCPA in the Tenth Circuit for secured debts in Chapter 7 cases. The "fourth option," also called "ride through," allows a Chapter 7 debtor who is not in default and continues to make payments in accord with the loan agreement to retain possession of collateral and continue to be protected by the stay without redeeming the collateral or reaffirming the secured debt. For the reasons stated below, the Court holds that BAPCAP automatically grants relief from stay when a debtor who is current in payments to the secured creditor elects the "fourth option" but does not require or authorize the Court to compel turnover of the collateral to the creditor. The debtor and the creditor are merely restored to the same position they were in before the bankruptcy was filed.

The foregoing issue is placed before the Court by the Motion to Compel Turnover of Vehicle filed by the First National Bank of Kansas (hereinafter "Creditor" or "Bank") and the Debtor's objection thereto. Bank appears by Chris M. Troppito, of Gunn, Shank, & Stover, PC. Debtor, Paul Douglas Rowe, appears by Drew Frackowiak, of Wiesner & Frackowiak, LLP. There are no other appearances. With the agreement of the parties, the issue is submitted on briefs.[1]

### FINDINGS OF FACT.

The uncontroverted facts are as follows. On or about October 9, 2001, Debtor executed a Retail Installment Agreement to purchase a used 2000 Dodge Stratus (hereafter "Stratus" or "Vehicle"). The agreement states it is governed by the law of Kansas and provides for 60 monthly payments of $306.98. The dealer assigned the paper to First National Bank of Kansas. The obligation is secured by a perfected security interest in the Stratus.

The Debtor filed a voluntary petition under Chapter 7 on November 2, 2005, after the effective date of BAPCPA. The parties agree Creditor is the holder of a claim secured by a perfected purchase money security interest in a 2000 Dodge Stratus. The Stratus is claimed as exempt. It is Debtor's only means of transportation and is used primarily for personal purposes. The Debtor was current on his payments to Creditor on the date of filing, when the balance was $3,991. In his Statement of Intention, Debtor stated that

---

1. This Court has jurisdiction pursuant to 28 U.S.C.A. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A proceeding regarding orders to turn over property of the estate and adjusting the creditor-debtor relationship and is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.A. § 157(b)(2)(E) and (O). There is no objection to venue or jurisdiction over the parties.

with respect to Creditor "Debtor will retain collateral and continue to make regular payments." The first meeting of creditors was set for November 28, 2005. The 341 hearing was continued at Debtor's request to December 15, 2005. It was held and concluded on that date. Debtor has failed to either enter into a reaffirmation agreement or redeem the collateral. Debtor is current on his payments to Bank and intends to remain current. The Debtor stipulated that if the Court rules that Debtor must enter into a reaffirmation agreement with Bank in order to keep the Vehicle, he will do so.

## ANALYSIS.

Before the 2005 amendments to the Code by BAPCPA, the Tenth Circuit in *Lowry* [2] sanctioned the use of the "fourth option" whereby a Debtor who at the time of filing was current on a debt secured by personal property could retain the property without either redeeming or reaffirming the debt. In *Lowry,* as in this case, the Chapter 7 Debtors on the date of filing were current on a loan secured by a purchase money security interest in their vehicle. They neither reaffirmed the debt nor redeemed the collateral. When the creditor sought to repossess the vehicle, the debtors filed a complaint for declaratory judgment and injunctive relief. The bankruptcy court concluded that the debtors were not in default and could not be forced to relinquish possession of the collateral. The court enjoined the creditor from repossessing the vehicle so long as the debtors remained current on the payments, provided adequate insurance, and were not otherwise in default of their contractual obligations.[3] The creditor appealed, and both the district court and the Tenth Circuit affirmed. The circuit court

acknowledged that § 521(2)(A) required the debtor to "file with the clerk a statement of his intention with respect to the retention ... of [secured] property, and, if applicable, ... that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property." Further, § 521(2)(B) provided that within 45 days of filing such a statement, "the debtor shall perform his intention with respect to such property." The issue presented was the consequence of the debtors' failure to comply with § 521(2). The court found that Congress failed to provide either a penalty for such noncompliance or a specific remedy to the creditor, such as an automatic right to repossess the collateral. Finally, the court rejected the creditor's argument that the obligation was in default because of the "ipso facto" clause in the loan agreement. The court agreed with the lower courts that the mere filing of the bankruptcy petition had not put the creditor in any more jeopardy than existed prior to the filing of the petition. The court concluded that, although it regarded the provisions of § 521 as mandatory, "we do not believe those provisions make redemption or reaffirmation the exclusive means by which a Bankruptcy Court can allow a debtor to retain secured property." [4]

■ This case presents the issue of whether the amendments to § 521 and related Code sections by BAPCPA change the result of *Lowry.* The following is a "redlined" version of § 521(a)(2), showing the deletions as cross-outs and the added provisions as underlines.

*(a)* The debtor shall—

2. *Lowry Fed. Credit Union v. West,* 882 F.2d 1543 (10th Cir.1989).

3. *Id.* at 1545.

4. *Id.* at 1547.

* * *

(2) if an individual debtor's schedule of assets and liabilities includes ~~consumer~~ debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within ~~forty-five days after the filing of a notice of intent under this section~~ *30 days after the first date set for the meeting of creditors under section 341(a),* or within such additional time as the court, for cause, within such ~~forty-five~~ *30*-day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, *except as provided in section 362(h);*

Subsection (h) of § 362, a new subsection referred to in § 521(a)(2)(C), was adopted as part of BAPCPA and provides:

(h)(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)—

(A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and

(B) to take timely the actions specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

The enactment of new § 362(h) significantly changes the analysis of *Lowry.* The "fourth option," which would otherwise still be allowed because of the continued use of the "if applicable" phrase in § 521(a)(2)(A), is prohibited by § 362(h)(1)(A), which requires the debtor "to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem ... pursuant to section 722[or] enter into an agreement of the kind specified in section 524(c)." The debtor must choose between one of three options: (1) Surrender; (2) retention coupled with redemption; or (3) retention coupled with reaffirmation of the debt. The "fourth option," retention of the collateral coupled with the adherence to the duties stated in the loan agreement, is *not included in the options allowed.* Fur-

ther, § 362(h)(1)(B) generally provides that if the debtor does not properly file the statement and take the action intended within the 30 days provided in § 521(a)(2)(B), the stay of § 362(a) is terminated and the collateral shall no longer be property of the estate.

The Court's research has located three cases and one article construing post-BAPCPA §§ 521(a)(2) and 362(h) in the same manner as this Court. In *In re Craker*,[5] about a year before filing a voluntary petition under Chapter 7, the debtor obtained a loan to purchase a vehicle and granted the lender a security interest, which was perfected. With respect to the vehicle, the Statement of Intention provided "Debtor will retain collateral and continue to make regular payments."[6] Creditor filed a motion seeking confirmation that the automatic stay terminated under § 362(h)(1) 30 days after the filing date because the debtor failed to file a Statement of Intention complying with § 521(a)(2). Court found that debtor's Statement of Intention did not comply with § 362(h)(1) because it did not state that she was either surrendering the vehicle or retaining the vehicle and if retaining the vehicle that she was either redeeming the collateral or reaffirming the underlying debt. The court granted the creditor's motion holding that "[b]ecause the debtor failed to indicate one of the options set forth in § 362(h)(1), the automatic stay terminated with regard to the Vehicle thirty days after the Petition Date."[7] The

other two decisions fail to provide complete factual contexts, but their construction of the new provisions are informative. In *In re Faught*,[8] the court states, "[S]imply being current is not a valid defense to a stay relief motion.... Retaining property and continuing to make regular payments is not one of the options available under the Bankruptcy Code."[9] In *In re Brown*,[10] when denying the debtor's motion for rehearing on a creditor's motion for order confirming that the automatic stay had been terminated, the court stated, "The automatic stay as to the Debtors' 2000 Volkswagon Beetle was terminated as a matter of law under 11 U.S.C. § 362(h)(1)(A) when they failed to timely file (within 30 days of the petition date) the Statement of Intentions required under 11 U.S.C. § 521(a)(2)(A) with respect to the vehicle."[11] The article[12] concludes:

> Taken together, the BAPCPA revisions to the Code sections relating to the "fourth option" provide unambiguous consequences if a chapter 7 debtor fails to enumerate in a statement of intention whether he or she plans to redeem, reaffirm or surrender: The automatic stay is terminated and the collateral at issue is no longer estate property.[13]

In this case, the Debtors' Statement of Intention did not conform to the requirement of § 362(h), and the Debtor maintains possession of the Stratus even though he has not redeemed the collateral

**5.**   337 B.R. 549 (Bankr.M.D.N.C.2006).

**6.**   *Id.* at 550.

**7.**   *Id.* at 551.

**8.**   No. 05–43548, 2006 WL 151884 (Bankr. W.D.Ky. Jan.19, 2006).

**9.**   *Id.* at *1.

**10.**   No. 05–35011–LMK, 2006 WL 871284 (Bankr.N.D.Fla. March 13, 2006).

**11.**   *Id.* at *1.

**12.**   Philip R. Principe, Did BAPCPA Eliminate the "Fourth Option" for Individual Debtors' Secured Personal Property?   24 Am. Bankr. Inst. J. 6 (2005).

**13.**   *Id.* at 49.

or reaffirmed the debt. The stay is therefore no longer in place.

■ The Creditor argues that § 521(a)(6), a new subsection enacted as part of BAPCPA, also applies and it precludes the Debtor's continued possession of the Vehicle and authorizes the Court to issue an order directing the Debtor to surrender the collateral to the Creditor. Debtor contends this section does not apply in this case because the Bank is not the holder of an allowed claim, as required by § 521(a)(6). This new subsection is similar to amended § 521(a)(2) when construed with new § 362(h), to which it refers. Section 521(a)(6) provides as follows:

(a) The debtor shall—

\* \* \*

(6) in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either—

(A) enters into an agreement with a creditor pursuant to section 524(c) with respect to the claim secured by such property; or

(B) redeems such property from the security interest pursuant to section 722.

If the debtor fails to so act within the 45–day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law, unless the court determines on the motion of the trustee filed before the expiration of such 45–day period, and after notice and a hearing, that such property is of consequential value or benefit to the estate, orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee;

■ The first question presented is whether this subsection applies in this case where the Creditor has not filed a proof of claim. Application of new (a)(6) is predicated upon a creditor's having "an allowed claim for the purchase price secured in whole or in part by an interest" in the collateral. Debtor contends there is no "allowed claim" because the Creditor has not filed a proof of claim. Creditor argues that it has an allowed claim because it has provided the trustee with information about its claim, there has been no dispute as to its secured status, and Debtor has not made any allegation that the Bank is not entitled to payment.

■ The phrase "allowed claim" is not expressly defined in the Code. This Court must therefore determine the meaning intended by Congress. "The starting point in discerning congressional intent is the existing statutory text." [14] When construing the Code, the courts have been directed to "begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.' "[15] In determining the scope of a

**14.** *Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).

**15.** *Hartford Underwriters Ins. Co. v. Union Planters Bank N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000), quoting *Connecti-*

348

statute, [the court] looks first to its language. "[W]here ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' "[16]

Despite the absence of a statutory definition of "allowed claim," the phrase has a fixed and clear meaning in bankruptcy. Allowability of claims has been denoted as "exclusively a bankruptcy concept," [17] and the "Bankruptcy Code is keyed to allowable claims." [18] Section 502 of the Code deals with allowance of claims. A commentator summarizes allowance of claims under § 502 as follows:

> Under this section, a claim becomes allowed in one of three ways: first, a proof of claim is filed or deemed filed and no party objects; second, a claim is allowed by the court after an objection is filed; and third, a claim is estimated by the Court under the provisions of section 502(c).[19]

Each of these routes to allowance of a claim requires that a proof of claim be filed under § 501 or be deemed filed. Claims are "deemed" filed in cases under Chapter 11, pursuant to § 1111(a),[20] but there is no comparable provision for Chapter 7 creditors. In a Chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice to creditors may include a statement to this effect and state that is not necessary for a creditor to file a proof of claim.[21] If such notice is given, and subsequently the trustee advises the court payment of a dividend appears possible, the clerk notifies creditors of that fact, and creditors may file proofs of claim within 90 days.[22] In other words, in a no-asset Chapter 7 case, a creditor will not usually file a proof of claim, and there is no statutory basis for a claim to be "deemed" filed. The consequence is that generally in a Chapter 7 case there will not be an "allowed claim," [23] and the condition for applicability of § 521(a)(6) will not be satisfied.

■ This construction of "allowed claim" is problematic. The Court does not believe that Congress could have intended the phrase "allowed claim" to have the clear meaning ascribed to it by operation of § 502, since this construction of "allowed claim" renders the section applicable only in asset chapter 7 cases when a secured creditor files a proof of claim after the clerk has given notice that assets are available for distribution. The Court therefore considers an additional rule of construction:

---

*cut Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

**16.** *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), *quoting Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917).

**17.** 4 *Collier on Bankruptcy* ¶ 502.01 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. Rev.2006). Future citations shall be to the paragraph only.

**18.** *Id.*

**19.** *Id.*

**20.** 11 U.S.C. § 1111(a).

**21.** Fed. R. Bankr.P.2002(e).

**22.** Fed. R. Bankr.P. 3002(c)(5).

**23.** In some cases, the courts have under equitable principles held that writings filed with the court other than a formal proof of claim are sufficient to constitute an "informal proof of claim," which then can be allowed. *See 4 Collier on Bankruptcy* ¶ 501.01[3][e]. Even if this exception were applicable under § 521(a)(6), which this Court seriously doubts, there has been no identification by Bank of any filing consisting of such an informal proof of claim.

The plain meeting of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." In such cases, the intention of the drafters, rather than the strict language, controls.[24]

The legislative history of the section does not limit its applicability to creditors holding "allowed claims." Rather, the House Report to § 304(1) of BAPCPA states:

> *Sec. 304. Debtor Retention of Personal Property Security.* Section 304(1) of the Act amends section 521(a) of the Bankruptcy Code to provide that an individual who is a Chapter 7 debtor may not retain possession of personal property securing, in whole or in part, a purchase money security interest unless the debtor, within 45 days after the first meeting of creditors, enters into a reaffirmation agreement with the creditor, or redeems the property. If the debtor fails to so act within the prescribed period, the property is not subject to the automatic stay and is no longer property of the estate.[25]

This report does not use the phrase "allowed claim." If the word "allowed" is disregarded in the construction of the subsection, it will have applicability in all Chapter 7 individual cases, not only asset cases. This Court is of the opinion that this was the intent of Congress and that this is one of those rare cases where the literal application of the statute would produce a result demonstrably at odds with the intentions of its drafters.[26] In this case, the Bank has a claim and the debtor is an individual, therefore, using the Court's construction, § 521(A)(6) is applicable in this case.

However, there is a fatal impediment to granting the relief sought by the Creditor under § 521(a)(6). Creditor argues that § 531(a)(6) allows the Court to order turnover of the Vehicle because the Debtor has neither redeemed the Vehicle not reaffirmed the secured debt. The Court disagrees with this construction. It is true that the first portion of the subsection, upon which Bank relies, states that "the debtor shall ... not retain possession of the personal property ... unless not later than 45 days after the first meeting of creditors," the debtor either reaffirms the debt or redeems the property. The Court finds the phrase "retain possession" to be descriptive of the right accruing to a debtor who either redeems or reaffirms. The remedy for failure to take these actions is stated in the following hanging paragraph. It provides that under the stated circumstance, the stay is terminated, the property no longer is property of the estate, and "the creditor may take whatever action" as is "permitted by applicable nonbankruptcy law." The remedy is not removal of the property from the debtor, it is termination of the stay. This is the same relief granted to a creditor under § 362(h).

In summary, there is serious question of whether § 521(a)(6) is applicable in this

---

**24.** *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235 at 242, 109 S.Ct. 1026, *quoting Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (citations omitted).

**25.** Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R.Rep. No. 109–31, Pt.1, at 70–71 (2005).

**26.** *See Waugh v. Internal Revenue Service,* 109 F.3d 489, 493 (8th Cir.1997) (holding that although § 108(c) states that it tolls priority periods only in nonbankruptcy cases, Congress intended § 108(c) and 26 U.S.C. § 6503(b) and (h) to toll the three-year period of § 507(a)(8)(A)(i)).

case where the Creditor did not file a proof of claim and therefore is not the holder of an allowed claim. If, however, § 521(a)(6) does apply as this Court concludes, it, like § 362(h), has the effect of termination of the stay because of the Debtors' failure to redeem the collateral or reaffirm the secured debt. Upon termination of the stay, however, the Creditor's rights are those under applicable nonbankruptcy law. Section 521(a)(6) does not require or empower the Court to order turnover of the collateral to the Creditor.

The Court next considers the consequence of the termination of the stay and removal of the property from the estate, whether pursuant to §§ 362(h) or 521(a)(6). The result of removal of property from the estate is revesting of the property with the debtor. The creditor's right to foreclose on the collateral is controlled by the security agreement and state law. Unless there is a default, the creditor is not entitled to possession of the collateral. In Kansas, there are two primary codes which apply to repossession of collateral, Article 9 of the Uniform Commercial Code (UCC)[27] and the Uniform Consumer Credit Code (UCCC),[28] applicable to all consumer transactions and those transactions made subject to the UCCC by agreement. Article 9 does not define default, leaving the parties to do so.[29] Under the UCCC, a creditor seeking to enforce the terms of a consumer credit transaction against a consumer who has defaulted in the terms of the note or security agreement can do so only if: (a) The consumer fails to make a payment required by the agreement; or (2) the prospect of payment, performance or realization of collateral is significantly impaired.[30] Kansas appellate courts have narrowly defined "significant impairment." [31]

Because in this case the Debtor is current in his payments, Creditor could foreclose upon expiration of the stay only if the prospect of performance or realization of the collateral is "significantly impaired." The parties agree that it is not likely that a Kansas court would find "significant impairment" under the circumstances of this case where Debtors are current on their payments, have stated their intent to remain current notwithstanding the filing of the bankruptcy proceeding, and there is no evidence that the secured party is not adequately secured.

■ In hope of avoiding this result, Creditor therefore cites the "ipso facto" clause in its security agreement and one additional amendment of § 521 by BAPCPA which Creditor argues enables it to obtain return of the Vehicle. A clause in the Bank's combined note and security agreement states:

7. Upon occurrence of any of the following events, Borrower will be in default under this agreement ... (d) the dissolution, termination of existence or business failure of Borrower, or any proceeding under any bankruptcy or insolvency laws is commenced by or against Borrower or any guarantor or surety for Borrower or Borrower makes an assignment for the benefit of creditors;

Creditor argues that the foregoing "ipso facto" clause, the provision that filing for bankruptcy constitutes an event of default,

---

**27.** K.S.A.2005 Supp. 84–9–101, et seq.

**28.** K.S.A. 16a–1–101 (1995), et seq.

**29.** See K.S.A.2005 Supp. 84–9–601.

**30.** K.S.A. 16a–5–109 (1995).

**31.** *Johnson County Auto Credit, Inc. v. Green,* 277 Kan. 148, 83 P.3d 152 (2004); *Prairie State Bank v. Hoefgen,* 245 Kan. 236, 777 P.2d 811 (1989); *Medling v. Wecoe Credit Union,* 234 Kan. 852, 678 P.2d 1115 (1984).

is now enforceable because BAPCPA added a new § 521(d), which provides:

(d) If the debtor fails timely to take the actions specified in subsection (a)(6) this section, or in paragraphs (1) and (2) of section 362(h), with respect to property ... as to which a creditor holds a security interest not otherwise avoidable under sections 522(f), 544, 545, 547, 548, or 549, nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor. Nothing in this subsection shall be deemed to justify limiting such a provision in any other circumstance.

This section basically states that if the debtor fails to timely file a Statement of Intention regarding redemption and reaffirmation and timely act to redeem or reaffirm, nothing in the Bankruptcy Code shall be construed as limiting any "ipso facto" clause in the underlying security agreement. That is all it says. It does not make such "ipso facto" clauses sufficient to define a default in accord with nonbankruptcy law.

■ Creditor seems to agree with this interpretation. It concedes Congress' stating that such clauses are not rendered unenforceable by bankruptcy law probably would be not be sufficient to make the filing of bankruptcy a "significant impairment" for purposes of the definition of default in the UCCC. Using this as a springboard, Creditor argues that Court should therefore order turnover of the Vehicle so Creditor could argue two factors in support of significant impairment: (1) The enforceability of the "ipso facto" clause; and (2) a Court order of turnover. As stated above, the Court finds no statutory authority for an order of turnover of the Vehicle. Even if the Court has such authority, it would not exercise discretion to do so under the circumstances of this case where the Debtors are current in their payments, have stated they intend to remain current until the debt is paid in full, and there no evidence of impairment of collateral.

In conclusion, the Court finds that Congress by amending §§ 521 and 362 intended to and was successful in eliminating the "fourth option," under which a Chapter 7 individual debtor having possession of personal property subject to a purchase money lien by performing all obligations under the security agreement and note could retain the property and be protected by the stay without either redemption of the property or reaffirmation of the secured debt. BAPCPA now provides consequences for failure to redeem or reaffirm when a debtor is current on payments. They are termination of the stay and removal of the collateral from property of the estate, with the creditor's remedies upon expiration of the stay being those provided by state law. In Kansas, the practical result in many cases will be no significant change from the pre-BAPCPA Code as construed by the Tenth Circuit, except the stay will be automatically lifted. When a consumer debtor is current on payments, a Kansas court may find a default under the Kansas UCCC only when the circumstances evidence significant impairment. Therefore, although Congress technically eliminated the "fourth option," as now there are consequences for failing to obtain a right of continued possession through redemption or reaffirmation, as applied to consumer transactions, in Kansas the creditor's remedy of expiration of the stay in many cases will be illusory, because the conditions to declare a default and obtain possession of the collateral will not be present under Kansas law when the

debtor remains current on the obligation and there is no other basis for finding significant impairment.

For the foregoing reasons the Court denies the Creditor's motion for turnover of the Vehicle. The Debtor's failure to file a Statement of Intent to either redeem the Vehicle or reaffirm the debt to the Bank within the time periods provided, has resulted in the automatic lifting of the stay and the removal of the Vehicle from the estate. The Bank's right to repossess the Vehicle are determined by state law; there is nothing in the Code as amended giving the Bank an immediate right of possession of the Vehicle.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**